JAMES T. AMIS *et als.* *v.* LEWIS T. MARKS *et als.*

1. EVIDENCE.   *Lost or destroyed instrument.   Copy prima facie evidence. When.*   In a suit upon a constable's bond against the sureties, a copy of the bond, certified by the clerk of the county court, by his deputy, to be a true and correct copy, as it appears of record and on file in his office, and produced by the clerk of the circuit court from a file of papers in his office, in a suit against the same sureties, in which a final judgment had been pronounced, is *prima facie* evidence of the bond, and that it was duly executed, acknowledged and recorded by the county court, it having been first shown that the records and papers of that court for the year in which the bond was given, and for several years immediately preceding and following, were lost or destroyed, and the defendants admitting by their pleadings that they did sign the bond.

2. CONSTABLE'S BOND.   *Securities bound, though not acknowledged in open court.* A constable's bond is good, although not acknowledged by the obligors in open court, and if delivered, accepted, recorded and filed, the proof necessary to avoid it as an escrow must be as clear, satisfactory and demonstrative as that required to set aside a decree or judgment of a court of record on the ground of fraud.

3. SAME.   *Agreement between principal and sureties will not affect rights of public.* A private agreement between the surety and principal of an official bond in the nature of a condition, will not affect the rights of the public, when the bond has been accepted by the proper authority without notice of the condition, especially if there be nothing on the face of the bond to excite suspicion.

---

FROM GILES.

---

Appeal from the Chancery Court at Pulaski.   W. S. FLEMING, Ch.

W. H. McCALLUM for complainants.

T. M. JONES for defendants.

COOPER, J., delivered the opinion of the court.

This bill is filed to hold the defendants liable as sureties on the official bond of William T. Marks, as constable of Giles county, the bond itself, together with the records of the county court for the year when given having been destroyed. William T. Marks died insolvent, and there has been no administration on his estate. He was elected constable in 1858 and again in 1860. The only controversy is in relation to the liability of the defendants, Lewis B. Marks and Samuel S. Williamson, on the bond of 1860. The Chancellor rendered a decree in favor of the defendants, and the complainants appealed.

The records and papers of the county court for the year 1860 and several years before and afterwards, are proven to have been destroyed. The complainants have introduced, as the next best evidence, a certified copy of a regular constable's bond, purporting in the body thereof to be the bond of William T. Marks as constable, and Samuel S. Williamson and Lewis B. Marks as sureties, in the penalty of $8,000, conditioned as required by law. Opposite the names of the obligors are written the words, " Test, E. W. Rose, chairman," etc., and Rose is proven to have been chairman of the county court when the bond purports to have been executed, namely, on the 2d day of April, 1860. The certificate to the copy of this bond is in the handwriting of the deputy clerk of the county court at the time it bears date, the 4th of April, 1861, and is authenticated by the signatures of the clerk by his

deputy. The certificate is, that "the within is a true copy of William T. Marks' bond as constable of said county, as the same appears of record and on file in my office." This certified copy is proved by the clerk of the circuit court to be on file in his office in a suit against these defendants, in which a final judgment had been pronounced.

The defendants, Samuel S. Williamson and Lewis B. Marks, in their answer to the present bill, admit that William T. Marks, either in 1858 or 1860, applied to them to become his sureties on his official bond as constable, and they did sign a bond as such. The proof is, that William T. Marks did enter upon and discharge the duties of constable in the year 1860, and afterwards continue to perform them, upon the faith of having qualified and given bond as required by law. Under these circumstances, if there were nothing else in the case, the duly certified copy of an official bond executed by the parties, would be *prima facie* evidence that the original bond, of which it purports to be the copy, was duly executed, acknowledged and received by the county court. The defendants say, however, that they never did acknowledge the bond before the county court, and they undertake to give their testimony to this effect, although one of them, Lewis B. Marks, says that he was giving his own bond as county trustee at the time, "and Squire Rose might have passed the bond to me and I might have signed it." Squire Rose, it will be remembered, marks his name opposite to the signatures of the obligors. If it be conceded that the

bond was not acknowledged in open court, it has been held both before and since the Code, that the bond would be good without the acknowledgment. *Goodrum* v. *Carroll*, 2 Hum., 490; *McLean* v. *State*, 8 Heis., 242; Code, section 773.

The defendants set up the defense that they signed the bond upon the understanding that it was to be signed by certain other persons named, before it was to be delivered to the county court. Their own testimony is the only evidence offered to sustain the defense, and each deposes to a separate conversation with their principal, W. T. Marks, when he applied to them for their signatures. Neither of them pretends that he had any conversation on the subject with any member or officer of the county court, or that any conversation on the subject took place in the hearing of the court, or any of its officers or members. Lewis B. Marks, who says that Squire Rose may have passed the bond to him and he may have signed it, testifies that he signed with the expectation that certain other persons named were to be called up to acknowledge the bond. He is then asked by his own counsel whether it was the distinct agreement that the bond was not to be delivered, or to become binding, until all of the parties named had signed and acknowledged. His answer is: "That was my calculation; there was no special agreement between us."

Williamson says, that W. T. Marks came to his house and asked him to go on the bond, and mentioned the names of certain persons who were going on it, when he, witness, said he would not object to be-

ing one of his sureties with them. On the next day Marks brought him the bond for his signature, when he noticed the name of Lewis B. Marks "upon the bond," by which he must mean, in the body of the bond with his own name, for the name of witness is signed at the foot of the bond before that of Lewis B. Marks. The bond was, therefore, at the time the witness put his signature to it, in the shape in which it now appears in the certified copy, with only two names in the body of it in addition to the name of the principal, being the names of the only two persons who actually executed it as sureties. Both of these witnesses say they knew William T. Marks was acting as constable afterwards, and yet neither ever made an enquiry about the bond.

Upon this testimony, and it is the only evidence in support of the defense, there is not the least pretence for holding that there was any such "special agreement," if such agreement can be made between the principal and surety alone, as would make out a valid defense, so far as Lewis B. Marks is concerned. And although Williamson's testimony is more direct as to an actual agreement, it can scarcely be contended that he, upon his own unsupported testimony, can be allowed to relieve himself from responsibility under the circumstances. It leaves it doubtful whether the promise of the principal was not rather by way of inducement, than by way of condition upon which alone the instrument was to be delivered, for the witness says nothing about delivery. *Evans* v. *Gibbs*, 6 Hum., 406; *Carrick* v. *French*, 7 Hum., 459.

Amis *v.* Marks.

The bond, whether acknowledged or not in open court, was *prima facie* delivered, accepted, recorded and filed. The proof necessary to avoid it as an escrow, if it can be so avoided, must be as clear, satisfactory and demonstrative as that required to set aside a decree or judgment of a court of record upon the ground of fraud. *Ward* v. *Cullom*, 2 Col., 353. If this can be done at all upon the unsupported testimony of the party who is sought to be charged, that testimony must be clear, explicit and demonstrative, to a positive certainty. If the law were otherwise, the people would have scant security under our system of official obligations.

The rule as to private obligations between parties under seal was, that an instrument might be delivered to the principal obligor upon condition that he procure another signature. *Perry* v. *Patterson*, 5 Hum., 132. But even in such case, and certainly since the abolishment of seals, ignorance of the condition where there was nothing on the face of the instrument to give notice, would protect a *bona fide* purchaser for value. *Merritt* v. *Duncan*, 7 Heis., 156; *State* v. *Potter*, 4 Cent. L. J., 85. Beore the Code, it was held by this court in one case, that the condition might be made by the surety with the officer of the county court whose duty it was to take the bond, and this, too, in the face of the record to the contrary. *Quarles* v. *Governor*, 10 Hum., 122. There are other decisions not in accord and which, perhaps, announce the safer and better rule. *Bryan* v. *Glass*, 2 Hum., 390; *Governor* v. *Organ*, 5 Hum., 161; *Ezell* v. *Justices*,

3 Head, 587.    But the court has never held that a private agreement between the principal and surety, in the nature of a condition, would affect the rights of the public in an official bond delivered and accepted without notice of the condition, and especially, where there was nothing on the face to give notice. The public, who are compelled to trust the officer on the faith of his bond, are in the highest sense *bona fide* purchasers for value and without notice. And the provisions of the Code are based on this view.    Code, sections 773, 774, 775.

The petition for re-hearing must be dismissed, and the judgment reversing the decree of the Chancellor, heretofore entered upon an opinion delivered by Judge Turney, must stand.